Our fifth case for this morning is United States v. Brown, and we will hear from Mr. Henderson. Thank you, Your Honor. May it please the Court, Peter Henderson appearing on behalf of Shuntay Brown. Our argument in this appeal is that the Alford plea was not entered into knowingly and voluntarily, but the main support for that proposition is that Mr. Brown was unlawfully detained. So I want to focus first on that statute and what exactly happened here. In January of 2014, the district court detained Mr. Brown for a competency exam, solely for a competency exam. It was explicitly under the statute governing that, section 4241 and 4247. So we know this part, but here's my question for you. You have, obviously, section 4241, and you have what appears to be a pretty clear violation of the number of days where the person can be kept. But my question is, what is the remedy for that violation? Because the remedy isn't automatically dismissing an indictment. The remedy isn't automatically anything, as far as I know. And, in fact, we have a case suggesting that maybe you have to just file for habeas if you've been held too long. I'm concerned with the government trying to bring in the Bail Reform Act. I don't think that was there. But the fact is, you're making assumptions about the remedy that I don't think are necessarily correct. Right. Well, and that's why I mean to clarify. Our argument here is not that we're entitled to anything under 4241, because I think Your Honor is correct that the remedy is mandamus or an interlocutory appeal. The remedy is release from custody pending the trial. Right. Yeah. If you bring the right thing when you're in that period of custody, but that ship sailed, you know, the 162 days went by. And so it seems to me that's just over with. Now, whether the plea, given the district court judge's remarks about, you know, in your position you ought to plead guilty or whatever, you know, these other things he's saying, you know, we could talk about that. But I'm just not sure there's anything left to be done about the apparent violation of 4142. Well, the reason why I think it's important in this case is because Mr. Brown clearly had identified this error. He had brought this up to the district court multiple times. He said, I'm entitled to relief. I'm entitled to relief. But he's not anymore. We just agreed that there's nothing the district court could do. Right. So when he's considering his options, I drew an analogy to the Fourth Amendment context, where the reason why consent that is given pursuant to an illegal seizure is not consent. The rationale has been, well, if you know that they're breaking the law and detaining you unlawfully, then who's to say that they're not going to then search you unlawfully? And so the consent is tainted. So if he had entered the plea on the 25th day of his detention and the court had said the very same thing, would the plea be involuntary? No. That would be a voluntary plea. And that's the very strange thing about this case, right? We know every day people plead guilty to get out of jail. Right. That was my point. I mean, they want it. They plead guilty. So they get out of jail. And the district judge is stating the obvious. I mean, it's not like it's a big secret to anybody. Exactly. And that's why I think the fact that he was unlawfully detained is a big deal. But I don't see where we get from the unlawful detention to some sort of coercion or involuntariness or other cognizable problem with the guilty plea. Right. And the knowing involuntary nature of the plea is evaluated under the totality of the circumstances. I think what you see at the plea hearing is Mr. Brown saying, I want to appeal this right away. I don't think that this is sort of a valid plea agreement. But I've got to do what I've got to do. I have options on appeal. I'll enter into this to get out of custody because that's what the judge is telling me is the only way to get out of custody. I can't rely on the statute.  I'll get out of custody. And the very next day, he enters his notice of appeal, 12 days before the judgment is even entered. Under the totality of the circumstances, I think it's clear that the plea colloquy, the plea, are you smuggling in through the back door a different remedy for the 4241 violation? What is exactly the violation that we're being asked under your view to address? The violation is that the court at the plea colloquy did not ensure that this plea was voluntary. So what more could the court have asked? Well, I think the court could have not so explicitly sort of conditioned your release on entering the plea today. And again, if he was not unlawfully detained, it's the fact of the unlawful detention. And this is a strange case, right? As I tried to say in the reply brief, this is one of those, as Judge Wood was saying, bad facts could make bad law and try to backdoor things. This was a person who, for many intents and purposes, was operating pro se, doesn't know about mandamus, doesn't know that he could appeal that decision. So does anybody ever bring damages actions for the detention? Well, I think he might. I haven't found any cases on that. I mean, but we've all agreed that, in principle, just a get-out-of-jail-free card is not the remedy for 4241 violations. Or did you not agree with that? I think that you get out of jail. I think it's not for free. No, but like after the fact. I mean, so there's the period during which your mental competency exam is underway. And if that goes on too long and you move promptly, certainly Fuller says there are remedies. But for people like Mr. Brown, who missed that vote, you know, it happened, it's over with, we can't turn the clock back, here he is now at his plea hearing. The menu has shrunk, right? Right. And so I don't see how he could be told, I mean, I don't know. He can't get a shorter sentence than time served anyway, so he's down at the bottom of potential sentences. So I'd say maybe if he was kept too long, you'd adjust the sentence, but that's not an option either. Right. So maybe he's just out of luck. He may be. We think that this was involuntary due to the coercion. The next step, I suppose, is to say, file a writ and say, my lawyer was ineffective for not, you know, getting me out of custody sooner. And then it's to file damages, right? There are a series of things. Our view is that the conviction should not stand based on what's already in the record. And the record shows a plea transcript that really was very confusing, and I don't think Mr. Brown clearly evinced his intent to knowingly and intentionally voluntarily plead guilty. Okay. Thank you. If you want to save a minute, that's fine. Ms. Romero. May it please the Court, my name is Jessica Romero and I represent the appellee of the United States. I think in summary, appellant's argument constitutes, essentially constitutes that there's three set of circumstances that somehow make this case really unique and distinguishable and somehow warrant this extraordinary remedy. I'd like to disentangle all three of them, discuss them, and explain why neither collectively nor independently do they warrant the remedy that defendants identify. And before you get to that, he was asking for release. And he wasn't released, and he was beyond the time. So I don't understand why that really wasn't brought home to bear to the district court by the government. I have two responses to that. The first is the nature of the release order in this case is silent as to what the statutory authority was for the district court to order the defendant detained. It is absolutely inaccurate to suggest that the record supports a finding that the order entered by the district court under 4127, I believe it was, to have the defendant evaluated for competency, which is the record at 30, in no way addresses the issue of detention. It simply says, pursuant to this provision of the statute, I order that the defendant be evaluated for competency. In a separate mini order, which is the record at 28, the district court addresses what happened at the status hearing that day in which defendant came to court and addressed the district court directly and said, I am 100% refusing to abide by the conditions of my bond, which require that I report to pretrial services first, and second, that I submit to a mental health evaluation. After that representation by the defendant, and in addition to that, I'm sorry, there's a third thing, the defendant also said, and in addition, I've been ordered to be evaluated by a state court judge, and I'm refusing to do that as well. After the defendant makes those representations in person to the district court, the district court then makes a statement along the lines of, you've violated your bond conditions both in the state court and in federal court. I also have serious doubts regarding your competency, and as a result I'm ordered that you be detained. The record at 28, the minute order entered by the district court at that point, says the defendant shall be remanded to the custody of the U.S. Marshals pending further order of the court. There's reference to a mental health evaluation being ordered, but in no way is there a causal effect between the detention order and the issue regarding the defendant's violation, I'm sorry, the need for a competency evaluation. They were both addressed on the same day and at the same time, but they actually had to do with the same issue, which was he needed to be evaluated, his bond conditions required that he do so, and he told the district court flatly that he refused to do so. And the prosecutor was there. Correct. And I think in addition, one of the issues that was raised in the reply brief is, well there was never a motion, a formal motion, that was filed to revoke the defendant's bond in the district court. And I think that the statute 3148 regarding revoking a bond indicates that the government may file a motion, but it's for the purpose of having the defendant respond to the allegations of a violation before the district court, before the district court in its discretion can enter an order based on clear and convincing evidence that there's no set of circumstances that seem to make it likely that the defendant is going to continue to abide by its conditions or appear. And that's basically what happened here. There was never a formal motion entered because the focus was, this is a man who has mental health issues. He's a prolific, frivolous violator. And so there was no, all right, given all that, at some point, though, the clock is ticking. The government is aware that the clock is ticking. That's right. So there's technically, the clock that the government is dealing with is the Speedy Trial Act, not the 30 days, because as understood in the district court, not just by the government, but by defense counsel, pretrial services, magistrate Judge Finnegan, everyone understood that this was a case where bond had been revoked and it was an issue under the bond statute whether defendant was eligible for release or not, not whether he had been detained solely for the purpose of conducting a mental health evaluation. So the clock was not the 30-day clock pursuant to the evaluation, the 31-28, and I apologize if I'm missing the numbers. So then are you suggesting then that the district court or the magistrate had no obligation to sort of keep track of what was going on, particularly when he makes requests that he wants to be released? So that's generally the second issue. I feel like there was contradicting statements made during argument by the appellant where, one, on the one hand, they want to make it seem like the defendant was really pro se before the district court. Therefore, his pro se filings, his pro se requests to the district court are what should be considered as to whether he preserved his issues and whether he actually raised the issue before the district court. Nonetheless, then there's statements about, well, perhaps the issue is whether his attorney really did properly raise it before the district court and whether he raised a claim for ineffectiveness as a result. He can't have it both ways. And the district court was very clear to Mr. Brown that he was represented by counsel. He was striking his pro se filings, which are the only filings that reference the 30-day clock pursuant to 41-48. And nonetheless, and he filed motions under the Speedy Trial Act as well, the district court not only addressed them but struck them because they were pro se, and this was done at defense counsel's request. Now, defense counsel, at his client's behest, did address the district court repeatedly asking for bond conditions. Again, in the context of the bond statute and not the mental health evaluation statute. But these were not meaningful, I would say, motions or motions that meaningfully contested the detention order because at the time that defense counsel would raise this  but I would also like to inform the court that he has an outstanding pending warrant from state court for having failed to comply with his bond conditions and submit to a mental health evaluation. So these were not meaningful or highly contested motions where defense counsel really indicated we're subject to some type of injustice. To the contrary, defense counsel made it seem like this was the only course of action and agreed that the defendant was not eligible for bond. All this basically convened, and it's clear from the record that by the time the defendant appeared for his change of plea hearing on July 8th, pretrial, Magistrate Judge Finnegan, the district court, the government, defense counsel, everyone agreed that the defendant was ineligible for detention based on bond, that he had not been submitted to a bond order or a detention order based solely on the evaluation. And the district court explains, look, pretrial is recommending you continue to be detained, you have been found to be homeless. There's been telephone calls placed to a homeless shelter to see if we can find you a bed, to fashion conditions of release. There's no guarantees that this is going to be able to be done. Nonetheless, you have a plea offer which is very beneficial to you and I will highlight the consideration that the defendant received in the context of this case for entering an Alford plea where he got to continue to claim his innocence was substantial. He received the benefit of having eight felony counts dismissed. But it's troublesome when a district judge says, well, you know, if you say yes, the odds are you'll be out of jail before the sun goes down. In your position, I would think the same thing. The best result is for you to claim your innocence and to plead guilty. That doesn't sound neutral and detached to me. And I agree. It's a troublesome way of handling it and it would make somebody feel the whole weight and prestige of the judge behind one side isn't the way it's supposed to go. I think the issue, Judge, is that the portion that's quoted in Appellant's brief actually omits both text preceding and subsequent to what the court just read, which is where the court says, but it is in the end your decision. No, I know he said that. But, you know, what do people listen to? It just seems to me this was not the best plea colloquy I've ever seen. I mean, he touches the required basis. I understand that. But looking at it as a whole, I think it's got some problems. Well, independent of that, there was a break after that statement was made for defense counsel to confer directly with his client in private. So this was not a statement that was made during the formal colloquy itself while the defendant was under oath. Okay. If there are no further questions, we ask that the district court be affirmed. All right, fine. Anything further, Mr. Henderson? Just a couple things. And, again, getting back to what I said at the beginning, this is about the voluntariness of Mr. Brown's plea, not about whether defense counsel is acting voluntarily. And so when I note the pro se filings, that goes to Mr. Brown's state of mind, what he knows about the statute, what he knows about how he's being detained. I really find unconvincing the government's argument that this was somehow pursuant to the Bail Reform Act. And if it was, it violated the Bail Reform Act. Section 3148 clearly says that if there is a hearing, the judicial officer shall enter in order of revocation and detention. He was just sentenced to time served and no supervised release. So what's he complaining about? What does he want, a chance to be sent to prison or what? That's discussions that we've had about what might happen after. So he is mentally ill. Because all you could get is a withdrawal of the plea, I assume. I mean, you're certainly not entitled to exoneration. My position is that a guilty plea or an Alfred plea waives fundamental rights in our criminal justice system, and the decision to do that ultimately is up to the client. But you would agree that it's insane to walk away from this situation where he's done with it at this point. Well, he has a misdemeanor, and it's a misdemeanor that has 162 days in custody if he ever gets charged with a set of crimes. Well, he's not getting his 162 days back, right? No, but that could increase a future sentence if he's ever convicted of something again. That's two points on the sentencing guidelines. I agree with that. You know, my counsel to him was my counsel to him, and he elected to go forward and challenge the plea. So I respect that. He's very aware of that. And I would hope that there's a resolution that we could reach with the United States Attorney's Office in this somewhat unique case if it were to be remanded to avoid more going straight back to the MCC. So just sort of on a going forward basis, what do you think, let's put the plea aside for a minute, that the court should have done to avoid this circumstance where he was in custody, continual custody, when it was in violation of the mental health, the mental competency statute? Well, I think that the court needs to... The main error, I think, was presumptive detention here, where he was detained until further order. So you think the order should have been entered more specifically saying, I'm detaining you now under... For 30 days. For 30 days, or I'm detaining you under the Bail Reform Act for the following reasons, or whatever, just crossing the T's and dotting the I's. Right, there needs to be some sort of order other than just I'm detaining you. Right, because normally under this, I mean, just going back to my district court days, if I had somebody like this, mental evaluation, they're resisting, they're resisting. Every 30 or 45 days, we'd be getting an update from the pretrial services. Counsel would come in, has he complied? Is he getting treatment or whatever? What's his level? And there's usually a regular sort of process in mind. And here, that's what concerns me. This thing seemed like it kind of slipped through the cracks. Other than him raising it. So that's what I was trying to look... How do we avoid... This is, to me, a very unusual kind of circumstance. It is, and I think Judge Zagel actually was doing a fairly decent job of trying to stay on top of this. The marshals took him to the wrong place. The marshals took him to somewhere that didn't have the competency. All right, well, if you could wrap up. Thank you. Thank you very much, Mr. Henderson. We'll take the case under advisement.